**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

13 CIV 8689

-------------------------------------------------------------X

IDDI AMADU,

                             Plaintiff,

           -against-

CITY OF NEW YORK; FRIENDS OF THE
HIGH LINE, INC.; KENYA ROBINSON;
TIM RIES; "JOHN DOE" PARKS OFFICIALS 1-10;
"JOHN DOE" HIGH LINE OFFICIALS 1-10;
"JOHN DOE" POLICE OFFICERS 1-10,

                         Defendants.

-------------------------------------------------------------X

**COMPLAINT**
**AND DEMAND FOR**
**JURY TRIAL**



Plaintiff, IDDI AMADU, by and through his attorneys, **Fisher, Byrialsen & Kreizer**

**PLLC,** complaining of the defendants herein, respectfully shows the Court and alleges:

### PRELIMINARY STATEMENT

1.     This is a civil rights action in which the plaintiff, IDDI AMADU, seeks relief for

defendants' violations, under color of state law, of his rights, privileges and immunities secured

by the 42 U.S.C. $\S\S$ 1983, 1985, 1986, and1988; the First, Fourth, Fifth and Fourteenth

Amendments to the United States Constitution; and the Constitution and laws of the State of

New York.

2.     Defendants CITY OF NEW YORK, THE FRIENDS OF THE HIGH LINE, INC.,

KENYA ROBINSON, TIM RIES, "JOHN DOE" POLICE OFFICERS 1-10, "JOHN DOE"

PARKS OFFICIALS 1-10, "JOHN DOE" HIGH LINE OFFICIALS 1-10, individually and, as

the case may be, in their official capacities, jointly and severally, did cause Plaintiff to be subject

to, *inter alia*, excessive and unreasonable force, false arrest, and false imprisonment, causing his

loss of liberty and physical and mental injury.

3.      Plaintiff seeks (i) compensatory damages for physical injury, psychological and

emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii)

punitive damages to deter such intentional or reckless deviations from well-settled constitutional

laws; and (iii) such other and further relief, including costs and attorneys fees, as this court

deems equitable and just.

## JURISDICTION

4.      This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, and the First,

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and the

constitutional, statutory, and common laws of the State of New York.

5.      Jurisdiction is invoked herein pursuant to the aforementioned statutory and constitutional

provisions and pursuant to 28 U.S.C. §§ 1331, 1343, this being an action seeking redress for the

violation of the Plaintiff's constitutional and civil rights.

6.      Plaintiff further invokes this Court's pendent jurisdiction over any and all state-law

claims and causes of action which derive from the same nucleus of operative facts that give rise

to the federally based claims and causes of action pursuant to 28 U.S.C. § 1367(a).

## VENUE

7.      Venue is properly laid in the United States District Court for the Southern District of

New York under 28 U.S.C. § 1391(b)(2), this being the District in which the claims arose.

## NOTICE OF CLAIM

8.      Plaintiff filed a Notice of Clam with the City of New York on or about December 27,

2012, within 90 days of the events complained of herein. More than 30 days have elapsed since

the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or

refused.

## TRIAL BY JURY

9.    Plaintiff demands a trial by jury on each and every one of his claims as pled herein pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

10.    The Plaintiff was a resident of City of New York, the County of Kings, and the State of New York during all times relevant hereto.

11.    At all times relevant hereto, defendant THE CITY OF NEW YORK (hereinafter, "THE CITY") was and is a municipality of the State of New York, created under the authority of the laws and Constitution of the State of New York and which, under the enabling law of the State of New York, among other powers, THE CITY owns, operates, manages, directs, and controls the New York City Police Department (hereinafter, "THE NYPD"), which employs the other named Defendants.

12.    At all times relevant hereto, defendant THE CITY was and is a municipality of the State of New York, created under the authority of the laws and Constitution of the State of New York and which, under the enabling law of the State of New York, among other powers, THE CITY owns, operates, manages, directs, and controls, under New York City Charter § 533, the New York City Department of Parks and Recreation (hereinafter, "THE PARKS DEPARTMENT"), which employs the other named Defendants. THE PARKS DEPARTMENT acts as THE CITY's agent in the area of maintenance and operation of City park land, and for which it is ultimately responsible.  The Parks Department Enforcement Police ("PEP officers"), which are PARKS DEPARTMENT officials, provide security for the High Line Park.

13.    At all times relevant hereto THE PARKS DEPARTMENT was under direct contract,

3

pursuant to a May 26, 2009 exclusive licensing agreement, with defendant THE FRIENDS OF

THE HIGH LINE, INC. (hereinafter, "FHL"), a New York not-for-profit corporation, located at

529 West 20th Street, Suite 8W, New York, New York 10014, which employs the other named

Defendants. FHL is under contract, pursuant to a May 26, 2009 exclusive licensing agreement, to

perform services on behalf of THE PARKS DEPARTMENT for a city owned public park known

as The High Line Park.  The services FHL contracted to provide, including maintenance,

security, and operations of a city owned public park, are those services traditionally reserved for

the state; thus, FHL was acting under color of state law.

14.     At all times relevant hereto and in all their actions described herein, the Defendants

JOHN DOE POLICE OFFICERS 1-10, JOHN DOE PARKS OFFICIALS 1-10, KENYA

ROBINSON, TIM RIES, and JOHN DOE HIGH LINE OFFICIALS 1-10,  were acting under

color of statutes, ordinances, regulations, policies, customs, and usages of THE NYPD, THE

PARKS DEPARTMENT and THE CITY; pursuant to their authority as employees, servants,

agents, and/ or contractors of THE NYPD and THE PARKS DEPARTMENT; and within the

scope of employment and incidental to their otherwise lawful duties and functions as employees,

servants, agents, and/or contractors.

15.     THE CITY is responsible for the hiring, training, supervision, discipline, retention and

promotion of the police officers, sergeants and/or employees of THE NYPD. At all times

relevant to this action, JOHN DOE POLICE OFFICERS 1-10 were police officers employed by

THE NYPD, and acting within the scope of their employment and acting under color of state

law.  They are being sued in both their individual and official capacities.

16.     THE CITY is responsible for the hiring, training, supervision, discipline, retention and

promotion of the officers, sergeants, officials and/or employees of THE PARKS

4

DEPARTMENT under New York City Charter § 533.

17.     At all times relevant to this action, JOHN DOE PARK OFFICIALS 1-10 were PEP officers, officials, and/or employees employed by THE PARKS DEPARTMENT, acting within the scope of their employment, and acting under color of state law. They are being sued in both their individual and official capacities.

18.     At all times relevant to this action, KENYA ROBINSON, TIM RIES, and JOHN DOE HIGH LINE OFFICIALS 1-10 were employed by FHL, and obligated under direct contract, by way of the May 26, 2009 exclusive licensing agreement, to perform services for THE PARKS DEPARTMENT. At all times relevant to the allegations in this complaint, KENYA ROBINSON, TIM RIES, and JOHN DOE HIGH LINE OFFICIALS 1-10  acted within the scope of their employment and under THE PARKS DEPARTMENT's supervision, direction, and control. FHL is under contract to perform services on behalf of THE PARKS DEPARTMENT for a city owned public park. The FHL is so intertwined with THE PARKS DEPARTMENT, it acted under color of state law. Employees and officials of FHL are being sued in both their individual and official capacities.

19.     Defendant KENYA ROBINSON is a maintenance technician at FHL. At all times relevant to the allegations in this Complaint he acted in his capacity as a maintenance employee for the FHL. His job duties fall under the authority of the May 26, 2009 exclusive licensing agreement with THE PARKS DEPARTMENT to provide such services for a city owned public park that were traditionally reserved for the state, thus he was acting under color of state law. He is sued in his individual and official capacities.

20.     Defendant TIM RIES is Director of Park Services at FHL. At all times material to allegations in this complaint, he is employed by FHL and is responsible for supervision and

5

training of Defendant KENYA ROBINSON, and for making and/or implementing policies and practices used by employees of FHL regarding treatment of vendors on the High Line. His job duties fall under the authority of the May 26, 2009 exclusive licensing agreement with THE PARKS DEPARTMENT to provide such services for a city owned public park that were traditionally reserved for the state, thus he was acting under color of state law. He is sued in his individual and official capacities.

## FACTS

21.     Plaintiff began vending his own artwork in the High Line Park in December 2011.

22.     Plaintiff sells his artwork at the High Line Park three days a week.

23.     Unlike other forms of vending, artists are not required to have a vending permit and/or license to sell their own original works of art to the public.

24.     In July 2010, THE PARKS DEPARTMENT issued new rules governing locations where art vendors can sell within New York City public parks. Those locations are referred to as Expressive Matter Vending Medallions ("EMV medallions") under the New York City Parks Rules and Regulations Title 56 § 1-05(b)(4)-(8). These medallions, act as markers for permissible locations where vendors may sell.

25.     The High Line Park is a city owned and operated public park that is elevated above ground level, and accessible to the public during operating hours. The High Line Park has five EMV medallion locations to sell artwork. Only one vendor is allowed to set up at any one medallion location at any one time. Access to these medallion locations is granted on a daily basis and is first come first serve.

26.     Plaintiff would regularly sleep on the street to ensure that he was one of the first five venders to set up at an EMV medallion location.

27.     Plaintiff has never sold art at the High Line Park without first securing one of the five permitted EMV medallion locations.

28.     Beginning in 2011, PARKS DEPARTMENT officers and FHL employees would regularly instruct Plaintiff to move or pack up his vending stand when he was not in violation of any published city park rules. Each time he was asked to move or pack up his vending stand, he had lawfully secured one of the five EMV medallion locations.

29.     Plaintiff's reputation as an artists' advocate was well known to THE PARKS DEPARTMENT and FHL officials and/or employees charged with directing operations at the High Line Park.

30.     A meeting between THE PARKS DEPARTMENT and FHL officials and/or employees concerning security at the High Line Park was held in or around December 2011, when a policy was established to harass and/or intimidate Plaintiff to drive him from the High Line Park. Defendants TIM REIS and KENYA ROBINSON were present for the meeting.

31.     THE PARKS DEPARTMENT and FHL officials and/or employees began to intimidate and harass Plaintiff soon after the December 2011 meeting. The harassment occurred at least two or three times a week. FHL employees would regularly attempt to drive his customers away from his stand. FHL employees would also physically threaten Plaintiff on a number of occasions when he would refuse to move or pack up his vending stand.

32.     Plaintiff made oral complaints about the conduct of FHL employees to a FHL supervisor.

33.     On or about December 14, 2012, the Plaintiff lawfully entered the High Line Park and properly secured one of the five EMV medallion locations. The particular EMV medallion location Plaintiff set up at on December 14, 2012 was located on the Chelsea Market Passage of the High Line Park.

7

34.     At approximately 5:00 pm on or about December 14, 2012, Plaintiff collected his

vending table and paintings and placed them on a hand truck.  He took his hand truck with his art

work and walked towards an elevator located at the 16th Street entrance of the High Line Park.

35.     While waiting for the elevator, Plaintiff heard yelling coming from behind him.  Plaintiff

turned and saw Defendant KENYA ROBINSON standing ten to fifteen feet behind him.

36.     Defendant KENYA ROBINSON yelled to Plaintiff that someone with a baby stroller was

coming to the elevator.  Plaintiff looked around but there was no one else in the vicinity.

37.     Defendant KENYA ROBINSON blocked and prevented Plaintiff from entering the

elevator and/or leaving the High Line Park.

38.     Defendant KENYA ROBINSON purposefully, maliciously, and willfully knocked

Plaintiff's art work from his hand truck to the ground, including a recent painting that was still

wet.  Two paintings were permanently destroyed.

39.     While Plaintiff was picking up his artwork, defendant KENYA ROBINSON

purposefully, maliciously, and willfully grabbed Plaintiff's arm with one hand and struck

Plaintiff two times with a walkie-talkie in the face, causing a laceration, bleeding, abrasion,

bruising and swelling to his lip and cheek causing him to lose balance and fall to the ground.

40.     THE PARKS DEPARTMENT PEP officers arrived shortly thereafter.

41.     After assessing Plaintiff's injuries, THE PARKS DEPARTMENT PEP officers called for

an ambulance and THE NYPD was called.

42.     Defendant TIM REIS, supervisor of Defendant KENYA ROBINSON, arrived at the

scene.  Defendant TIM REIS did not come to Plaintiff's assistance, or ask him what happened.

43.     Defendant KENYA ROBINSON remained at the scene and told THE PARKS

DEPARTMENT PEP officers, NYPD officers, and FHL officials present that he "dropped the

guy," referring to Plaintiff.

44.      As Plaintiff was on the ground, a John Doe Police officer kicked Plaintiff's lower leg and

instructed Plaintiff to wake up and go home.  A PARKS DEPARTMENT PEP officer told John

Doe Police officer to stop kicking Plaintiff because he was injured and awaiting an ambulance.

45.      Plaintiff was taken to Beth Israel Hospital located at 317 East 17th Street in the County

and State of New York.

46.      A witness was present at the scene and observed Plaintiff lying on the ground, injured

and bleeding. The witness also observed all subsequent interactions between Plaintiff and the

NYPD officers, the PARKS DEPARTMENT PEP officers, and FHL officials and employees

present at the scene. The witness accompanied Plaintiff in the ambulance to Beth Israel Hospital.

47.      The same PARKS DEPARTMENT PEP officer, who instructed John Doe Police officer

to stop kicking Plaintiff, accompanied Plaintiff to the hospital.

48.      This same PARKS DEPARTMENT PEP officer received radio instructions from a

PARKS DEPARTMENT supervising officer to place Plaintiff under arrest.  No explanation of

why Plaintiff was being arrested was given with these instructions.

49.      Plaintiff was than handcuffed and placed under arrest while being treated in the

ambulance.

50.      Plaintiff was also handcuffed and under arrest for the entirety of his treatment at Beth

Israel Hospital.

51.      Plaintiff arrived at Beth Israel Hospital at 6:49 pm on December 14, 2012 and was not

discharged until 6:05 am on December 15, 2012.

52.      At Beth Israel Hospital, Plaintiff received a computed tomography ("CT") scan for his

head injuries and ten stitches to his upper lip.   He was given medication to treat the swelling on

the left side of his face, and prescribed an antibiotic.

53.     NYPD and PARKS DEPARTMENT officers guarded Plaintiff for the entirety of his treatment at Beth Israel Hospital even though Plaintiff was handcuffed to his bed.

54.     The handcuffs placed on Plaintiff interfered with the hospital staff's ability to treat Plaintiff. The handcuffs were tight and caused bruising, redness, and pain.

55.     At no time during the events described above did Plaintiff commit a criminal offense.

56.     At no time during the events described above was there probable cause for Plaintiff's arrest.

57.     At no time during the events described above was Plaintiff told why he was being arrested and for what charges.

58.     Plaintiff was never questioned by FHL officials, including defendants TIM REIS, NYPD officers, or PARKS DEPARTMENT officers about the facts or circumstances underlying the assault on his person.

59.     PARKS DEPARTMENT officials released Plaintiff after he was discharged from Beth Israel Hospital. No charges were ever formally filed against Plaintiff.

60.     As a result of the assault on his person and his false arrest, Plaintiff suffered from intense headaches, psychological and emotional distress, sleeplessness, fear, and chronic wrist pain from the excessive tightness of the handcuffs.

61.     Plaintiff sought subsequent treatment for his injuries and pain.

62.     Defendant KENYA ROBINSON was not arrested on December 14, 2012.

63.     Plaintiff filed a complaint with the Crime Victim Unit at the New York County District Attorney's Office.

64.     The New York County District Attorney's office than formally charged Defendant

KENYA ROBINSON for Assault.

65.     Two witnesses were sent to the district attorney's office on Defendant KENYA
ROBINSON's behalf to give false testimony to exonerate him.

66.     The High Line Park has a series of security cameras around the facility. Specifically, a
video camera was installed and angled directly at the elevator where the subject incident
occurred. Representatives of FHL acknowledged the existence of a video camera at that
location.

67.     On December 28, 2012, Plaintiff's prior counsel sent a letter to FHL corporate officials
demanding preservation of evidence for claim for assault and battery. This demand included
preservation of any video evidence of the subject incident.

68.     Representatives of the FHL thereafter represented that no such video existed.

69.     On September 27, 2012, and within ninety (90) days of the incident, a Notice of Claim on
behalf of Plaintiff was served upon NYC.

70.     At least thirty (30) days have elapsed since said demand and/or claim upon which this
action is in part predicated was presented to NYC for adjustment and NYC has neglected and/or
refused to adjust and/or make payment.

71.     This action is commenced within one (1) year and ninety (90) days of the occurrence
herein.

## CLAIMS ARISING UNDER FEDERAL LAW

### FIRST CLAIM FOR RELIEF:
### DEPRIVATION OF FEDERAL CIVIL RIGHTS
### Constitutional Rights Pursuant to 42 U.S.C. §§ 1983, 1988
### Violation of First, Fourth, Fifth, and Fourteenth Amendment
### (Against All Defendants)

72.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with

the same force and effect as though fully stated herein.

73.    All of the aforementioned acts of Defendants, their agents, servants, and employees were carried out under color of state law.

74.    All of the aforementioned acts deprived Plaintiff of the rights, privileges, and immunities guaranteed citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, including, but not limited to:

   a.  the right to be free from regulation or censorship of expressive speech,

   b.  the right to be free from unreasonable searches of his person,

   c.  the right to be free from unreasonable seizure of his person, including excessive force,

   d.  the right to be free from arrest without probable cause,

   e.  the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion or legal justification, and of which detention, plaintiff was aware and to which he did not consent,

   f.  the right to be free from the lodging of false charges against him by police officers,

   g.  the right to be free from abuse of process,

   h.  the right to be free from deprivation of liberty without due process of law, and

   i.  the right to equal protection, privileges and immunities under the laws.

75.    All of the aforementioned acts were carried out in violation of 42 U.S.C. § 1983.

76.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as PARKS DEPARTMENT and NYPD officers, agents, contractors, or

employees with the entire actual and/or apparent authority attendant thereto.

77.     At all times material to the allegations above, Defendants FHL, ROBINSON, REIS, and
John Doe High Line Officials 1-10 exercised rights created by a exclusive licensing agreement
with THE PARKS DEPARTMENT to operate, maintain, and secure the High Line Park, a city
run public park.  That agreement grants FHL and its employees' decision making authority over
operation and security of the park.  The acts complained of were carried out by the
aforementioned individual Defendants in their capacities as FHL officials and employees with
the entire actual and/or apparent authority attendant thereto.

78.     The acts complained of were carried out by the aforementioned individual Defendants in
their capacities as NYPD police officers, PARKS DEPARTMENT PEP officers, or as FHL
officials, employees, agents and/or contractors acting under exclusive licensing agreement with
THE PARKS DEPARTMENT, pursuant to the customs, usages, practices, procedures, and rules
of THE CITY, THE NYPD, and THE PARKS DEPARTMENT respectively, and all under the
supervision of ranking officers of said departments.

79.     Defendants, collectively and individually, while acting under color of state law, engaged
in conduct which constituted a custom, usage, practice, procedure, or rule of his/her respective
municipality/authority, which is forbidden by the Constitution of the United States.

80.     By these actions, these Defendants have deprived Plaintiff of rights secured by the First,
Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42
U.S.C. § 1983, for which the Defendants are individually and jointly liable.

**SECOND CLAIM FOR RELIEF:**
**EXCESSIVE FORCE UNDER 42 U.S.C. § 1983**
**(Against All Defendants)**

81.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with

the same force and effect as though fully stated herein.

82.     The degree of force used by Defendants was excessive, unreasonable, and unwarranted.

83.     Defendants' actions were intentional, willful, malicious, egregious, grossly reckless and negligent, unconscionable, and unprovoked.

84.     As a result of the excessive force and brutality, Plaintiff sustained multiple injuries to his mouth and face, resulting in ten stitches to his lip, permanent scarring, pain, suffering, headaches, fever, humiliation, chronic wrist pain from the excessive tightness of the handcuffs, and endured serious emotional and psychological distress.

85.     All of the aforementioned acts of the Defendants constituted excessive force under the laws of the State of New York and the United States Constitution and the Defendants are liable for said damage.  Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear and adjudicate such claims that pertain to state law.

**THIRD CLAIM FOR RELIEF:**
**<u>ASSAULT AND BATTERY</u>**
**(Against All Defendants)**

86.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

87.     By the aforementioned actions, the Defendants did inflict assault and battery upon Plaintiff.  The acts and conduct of the officers, officials and employees of THE NYPD, THE PARKS DEPARTMENT and FHL, an entity contracting under exclusive lease agreements with THE PARKS DEPARTMENT, were the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

88.     As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific bodily

injury, pain and suffering, great humiliation, mental anguish, costs, and expenses and were

otherwise damaged and injured. Pursuant to 28 U.S.C. §1367, this Court has pendant jurisdiction

to hear and adjudicate such claims.

## FOURTH CLAIM FOR RELIEF:
## FALSE IMPRISONMENT
### (Against All Defendants)

89.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with

the same force and effect as though fully stated here.

90.     As a result of his false imprisonment by being handcuffed inside the ambulance,

handcuffed to his hospital bed, and guarded and prevented from leaving his hospital room,

Plaintiff was subjected to severe emotional distress, humiliation, ridicule, mental anguish and

disgrace and was deprived of his liberty.

91.     All of the aforementioned acts of the Defendants constituted false imprisonment under

the laws of the State of New York and the United States Constitution and the Defendants are

liable for said damage.  Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear

and adjudicate such claims that pertain to state law.

## FIFTH CLAIM FOR RELIEF:
## FALSE ARREST
### (Against All Defendants)

92.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with

the same force and effect as though fully stated herein.

93.     As a result of defendants' aforementioned conduct, plaintiff was subject to an illegal,

improper, and false seizure and arrest by the defendants and taken into custody and caused to be

falsely imprisoned, detained, confined, incarcerated, and prosecuted by the defendants in

criminal proceedings, without any probable cause, privilege, or consent.

94.     As a result of her false arrest, plaintiff was subjected to severe emotional distress,

humiliation, ridicule, and disgrace and was deprived of her liberty.

95.     All of the aforementioned acts of the defendants constituted false arrest under the laws of

the State of New York and the United States Constitution and the Defendants are liable for said

damage.  Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear and adjudicate

such claims that pertain to state law.

**SIXTH CLAIM FOR RELIEF:**
**MUNICIPAL LIABILITY**
**Constitutional Rights Pursuant to 42 U.S.C. §1983**
**Violation of First, Fourth, Fifth, and Fourteenth Amendment**
**(Against Defendant THE CITY)**

96.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with

the same force and effect as though fully stated herein.

97.     The acts complained of herein were carried out by the Defendant officers in their

capacities as NYPD police officers and employees, PARKS DEPARTMENT PEP officers and

employees, FHL officials and employees acting as agents and/or contractors of THE PARKS

DEPARTMENT, pursuant to the customs, policies, usages, practices, procedures, and rules of

THE CITY, THE NYPD, THE PARKS DEPARTMENT and all under the supervision of

ranking officers of said departments.

98.     Prior to December 14, 2012, THE CITY, THE NYPD and THE PARKS DEPARTMENT

developed and maintained policies or customs exhibiting deliberate indifference to the

Constitutional rights of persons in New York City, which caused the violation of Plaintiff's

rights.

99.     It was the policy and/or custom of THE CITY, THE NYPD and THE PARKS

DEPARTMENT to inadequately and improperly train and supervise its officers, including the

defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its officers.

100.    It was the policy and/or custom of THE CITY, THE NYPD and THE PARKS DEPARTMENT to inadequately and improperly investigate complaints of misconduct against officers, officials, and employees filed by persons arrested by officers, and acts of misconduct were instead tolerated by THE CITY, including, but not limited to the following incidents: assault and battery, harassment, negligence, intentional infliction of emotional distress and deliberate indifference to medical needs.

101.    The foregoing customs, policies, usages, practices, procedures, and rule of THE CITY, THE NYPD and THE PARKS DEPARTMENT constituted deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff.

102.    The foregoing customs, policies, usages, practices, procedures, and rule of THE CITY, THE NYPD and THE PARKS DEPARTMENT were the proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

103.    The foregoing customs, policies, usages, practices, procedures, and rule of NYC, THE NYPD and THE PARKS DEPARTMENT were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

104.    As a result of the above described policies and customs, officers and officials of THE NYPD and THE PARKS DEPARTMENT, including the defendant officers, believed that their actions would not be monitored by supervisory officers and that their own misconduct would not be investigated or sanctioned, but instead would be tolerated.

105.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

17

106.    Defendants, collectively and individually, while acting under color of state law,
acquiesced in a pattern of unconstitutional conduct by subordinate officers and were directly
responsible for the violation of Plaintiff's constitutional rights.

107.    Defendant THE CITY, as municipal policymakers in the training and supervision of
Defendant police officers/employees, have pursued a policy and custom of deliberate
indifference to the rights of persons in their domain who suffer violations of their freedom from
deprivation of Liberty without Due process of law in violation of the First, Fourth, Fifth, and
Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and the
Constitution and laws of the State of New York.

108.    All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights,
including, but not limited to, the right:

> a.    The right to be free from regulation or censorship of expressive;
>
> b.    Not to be deprived of liberty without due process of law;
>
> c.    To be free from unreasonable search and seizure under the Fourth and
>        Fourteenth Amendments to the United States Constitution;
>
> d.    To be protected against violations of his civil and constitutional rights;
>
> e.    Not to have cruel and unusual punishment imposed upon him; and
>
> f.    To receive equal protection under the law.

### SEVENTH CLAIM FOR RELIEF:
### <u>CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS</u>
### <u>UNDER 42 U.S.C. § 1983, 1985, 1986</u>
### (Against All Defendants)

109.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

110.   All the defendants, acting with each other individually and on behalf of and under the auspices and control of THE CITY, and under color of law, conspired to injure plaintiff in his person and property and deprive plaintiff of his First, Fourth, Fifth and Fourteenth Amendment rights. The defendants jointly caused such deprivation of rights by acting in concert to disseminate false information concerning the plaintiff and by disseminating false information that lacked any reasonable basis or probable cause to support it that the plaintiff committed a crime, and/or to charge him with a crime, and/or to arrest him.

111.   The defendants further deprived the plaintiff of his due process rights specifically by conspiring to and assisting in the arrest of the plaintiff without probable cause and participating in the prosecution of plaintiff; by denying the plaintiff his First, Fourth, Fifth and Fourteenth Amendment rights via a conspiracy to deprive the plaintiff of his liberty and destroying his property without due process and compensation; conspiring together to cover up the misconduct they committed; and preventing the plaintiff from being compensated for his wrongful arrest, for the loss of his constitutional rights, the loss of his of opportunity to work and for the emotional harm he suffered.

112.   The aforesaid actions by the defendant police officers were done pursuant to an official municipal policy or custom of the city and state, which policy involved the indiscriminate detention, interrogation, intimidation, denial of medical attention, and prosecution of individuals

19

who were not engaged in criminal conduct, and for the purpose of thwarting the fair administration of justice.

113.    The defendants' failure to stop these wrongful acts and actions constitutes a breach of their duty to do so under 42 U.S.C. § 1986.

114.    The defendants knew or should have known that the misconduct and false and fabricated accusations and/or charges against plaintiff were violative of his First, Fourth, Fifth and Fourteenth Amendment rights to due process and equal protection, and were tantamount to unequal protection under the law, in violation of the plaintiff's fundamental rights under the Constitution.

115.    Said defendants had the power to prevent the continued due process violations against the plaintiff, yet had failed to prevent the dissemination of false information and/or to dismiss the fabricated accusations and arrest of plaintiff, and/or to protect the plaintiff from the unwarranted and potential harm and penalties of said charges.

116.    Defendants herein, their agents, servants and employees, motivated in part by racial and/or ethnic animus, conspired to deprive plaintiff of his federal civil and constitutional rights, in violation of 42 U.S.C. § 1985.

117.    All of the aforementioned acts of Defendants constituted a violation of Plaintiff's civil rights provided to him under the United States Constitution and 42 U.S.C. § 1983, 1985, and 1986.

## EIGTH CLAIM FOR RELIEF:
## FAILURE TO INTERVENE
## UNDER FOURTH AMENDMENT – 42 U.S.C. § 1983
### (Against All Defendants)

118.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

119.   THE NYPD officers and THE PARKS DEPARTMENT PEP officers have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the its department employing unjustified and excessive force against a civilian or falsely arresting a civilian.

120.   Defendant NYPD officers and PARKS DEPARTMENT PEP officers were present on December 14, 2012 in the vicinity of plaintiff being kicked in the lower leg by John Doe Police officer and in the vicinity of plaintiff's arrest in the ambulance and witnessed other NYPD officers, PARKS DEPARTMENT PEP officers or officials, of FHL officials or employees acting with authority under contract with THE PARKS DEPARTMENT, *inter alia*,

   a. Use unlawful force against plaintiff, including kicking plaintiff in the lower leg,

   b. Admit to the assault on plaintiff,

   c. and falsely arrest plaintiff without probable cause.

121.   The arrest of plaintiff while he was being rushed to the emergency room was clearly without probable cause or any other legal justification, yet defendants failed to take any action or make any effort to intervene, halt or protect plaintiff from the illegal arrest.

122.   Defendants' violated plaintiff's constitutional rights by failing to intervene in his false arrest, or the clearly unconstitutional use of force by John Doe Police officer and Defendant

21

KENYA ROBINSON, that resulted in injury and damages.

## PENDENT LAW CLAIMS
**State-law claims and causes of action deriving from the same nucleus of operative facts that give rise to the federally based claims and causes of action pursuant to 28 U.S.C. § 1367(a)**

### NINTH CLAIM FOR RELIEF:
### FALSE ARREST
### (Against All Defendants)

123.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

124.   As a result of defendants' aforementioned conduct, plaintiff was subject to an illegal, improper, and false seizure and arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated, and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege, or consent.

125.   As a result of her false arrest, plaintiff was subjected to severe emotional distress, humiliation, ridicule, and disgrace and was deprived of her liberty.

126.   All of the aforementioned acts of the defendants constituted false arrest under the laws of the State of New York and the United States Constitution and the Defendants are liable for said damage. Pursuant to 28 U.S.C. § 1367, this Court has pendent jurisdiction to hear and adjudicate such claims that pertain to state law.

### TENTH CLAIM FOR RELIEF:
### FALSE IMPRISONMENT
### (Against All Defendants)

127.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated here.

128.   As a result of his false imprisonment, Plaintiff was subjected to severe emotional distress, humiliation, ridicule, mental anguish and disgrace and was deprived of his liberty.

22

129.    All of the aforementioned acts of the Defendants constituted false imprisonment under

the laws of the State of New York and the United States Constitution and the Defendants are

liable for said damage.  Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear

and adjudicate such claims that pertain to state law.

**ELEVENTH CLAIM FOR RELIEF:**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against All Defendants)**

130.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the

foregoing paragraphs with the same force and effect as if fully set forth herein.

131.    Defendants engaged in extreme and outrageous conduct beyond all possible bounds of

decency when they arrested and imprisoned Plaintiff.

132.    Defendants' extreme and outrageous conduct was intended to inflict severe distress upon

Plaintiff when they arrested and imprisoned him.

133.    Defendants' outrageous conduct did inflict severe distress upon Plaintiff, which caused

Plaintiff to suffer anxiety and mental anguish.

134.    All of the aforementioned acts of the Defendants constituted intentional infliction of

emotional distress under the law of the State of New York and the Defendants are liable for said

damage.  Pursuant to 28 U.S.C. § 1367, this Court has pendant jurisdiction to hear and adjudicate

such claims.

**TWELTH CLAIM FOR RELIEF:**
**ASSAULT AND BATTERY**
**(Against All Defendants)**

135.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with

the same force and effect as though fully stated herein.

23

136.    By the aforementioned actions, the Defendants did inflict assault and battery upon

Plaintiff. The acts and conduct of the officers and employees of THE NYPD, THE PARKS

DEPARMENT and FHL as a contracting entity with THE PARKS DEPARMENT, were the

direct and proximate cause of injury and damage to Plaintiff and violated his statutory and

common law rights as guaranteed by the laws and Constitution of the State of New York.

137.    As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific bodily

injury, pain and suffering, great humiliation, mental anguish, costs, and expenses and were

otherwise damaged and injured. Pursuant to 28 U.S.C. §1367, this Court has pendant jurisdiction

to hear and adjudicate such claims.

## THIRTEENTH CLAIM FOR RELIEF:
### CONVERSION
### (Against Defendant Robinson)

138.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with

the same force and effect as though fully stated herein.

139.    By the aforementioned actions, Defendant ROBINSON did exercise dominion and

control over Plaintiff's paintings when he intentionally knocked them off of his hand truck,

permanently destroying them.

140.    As a result of the foregoing, Defendant Robinson substantially interfered with his right to

possess his personal paintings and art works.

141.    The Plaintiff suffered injuries and damages. Pursuant to 28 U.S.C. §1367, this Court has

pendant jurisdiction to hear and adjudicate such claims.

## FOURTEENTH CLAIM FOR RELIEF:
### VICARIOUS LIABILITY
### (Against Defendant FHL)

142.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with

the same force and effect as though fully stated herein.

143.    Pursuant to and under pendent State law and pendent State claim jurisdiction and
independent of the federally based claim against the Defendant FHL, Defendant FHL is
vicariously liable for Defendant ROBINSON's intentionally tortuous conduct, as Defendant
ROBINSON acted within the scope of his employment when he assaulted plaintiff and such
conduct was foreseeable given Defendant ROBINSON's known criminal history and propensity
to commit violent crimes.

144.    The Plaintiff suffered injuries and damages. Pursuant to 28 U.S.C. §1367, this Court has
pendant jurisdiction to hear and adjudicate such claims.

## FIFTHTEENTH CLAIM FOR RELIEF:
## NEGLIGENT HIRING
### (Against Defendants FHL)

145.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with
the same force and effect as though fully stated herein.

146.    Pursuant to and under pendent State law and pendent State claim jurisdiction and
independent of the federally based claim against the Defendant FHL, Defendant FHL is liable to
Plaintiff for the negligent hiring of defendant TOM REIS and defendant KENYA ROBINSON,
as Defendant FHL knew or should have known of defendant KENYA ROBINSON's prior
criminal acts and propensity to commit violent acts.

147.    The negligent hiring of defendant TIM REIS and defendant KENYA ROBINSON was
the proximate cause of the Plaintiff's injury and damages. Pursuant to 28 U.S.C. §1367, this
Court has pendant jurisdiction to hear and adjudicate such claims.

## SIXTEENTH CLAIM FOR RELIEF:
### RESPONDEAT SUPERIOR
#### (Against Defendant THE CITY)

148.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

149.    Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant City of New York, the Defendant City of New York is responsible, under State law claims, for the actions and conduct of its Defendant officers, as employees and agents of the City of New York, pursuant to the doctrine of respondeat superior.

150.    The plaintiff suffered injuries and damages. Pursuant to 28 U.S.C. §1367, this Court has pendant jurisdiction to hear and adjudicate such claims.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

1. Special and Compensatory damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) DOLLARS; and

2. Punitive damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) DOLLARS; and

3. Reasonable attorney's fees and costs expended on his behalf as to such Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988; and

4. Such other and further relief as this Court deems just and proper.

DATED:     New York, New York

           December 6, 2013

                              Respectfully submitted

                              Jane H. Fisher-Byrialsen, Esq.
                              FISHER, BYRIALSEN & KREIZER PLLC
                              *Attorney for Plaintiff*
                              291 Broadway, Suite 709
                              New York, New York 10007
                              (212) 962-0848